J. LESTER KINNEY, Plaintiff, *v.* W. HARRY GLENNY and Others, Defendants.

Supreme Court, Erie County, March 27, 1930.

*Donovan & Raichle* [*Frank G. Raichle* and *Carlos C. Alden* of counsel], for the plaintiff.

*Elmer E. Finck,* for the defendants.

NOONAN, J. This is an action in equity to rescind an agreement relating to the purchase of certain stock.

It appears that the defendants are a firm of stockbrokers engaged in business as such at Buffalo, N. Y., and had been engaged in that business for a number of years prior to the transactions here in question.

The plaintiff was a customer of the defendants and had been dealing in stocks through them for some time prior to February 13, 1929. On that date plaintiff placed an order with the defendants for the purchase of five hundred shares of Consolidated Automatic Merchandising Corporation stock at a price of thirty-five dollars and fifty cents per share, "or better," meaning thereby that the stock should be procured at a lower price if it could be done. The plaintiff claims that the order included a direction to buy the stock on the curb. This the defendants deny and the evidence upon this point is conflicting. Upon receiving the order the defendants, by telephone, called F. J. Lisman & Co. of New York, the bankers in charge of the stock issue, and inquired whether they could supply the stock at the price named, and said Lisman & Co., after ascertaining the price of said stock on the curb market, wrote the defendants, as follows: "In accordance with telephonic advices of even date we are pleased to confirm *sale to you* of: — five hundred shares Consolidated Automatic Merchandising Corporation preferred stock at 35½, *less one point concession to you.*

"It is understood that you are to protect the above numbers for a period of sixty days, reimbursing the one per cent per share allowed at time of delivery should any of the above numbers be repurchased in the open market at or below the price of 35½ per share."

The stock was not bought on the curb market but taken from the stock F. J. Lisman & Co. were putting upon the market.

It thus appears that the defendants arranged to pay $34.50 for the stock, subject to the obligation on their part to repay to said Lisman & Co. $1 per share, amounting in all to $500, if any of the stock should be sold on the market within sixty days at $35.50 per share or less. The defendants, upon making the telephonic arrangement with Lisman & Co., notified the plaintiff that they had purchased on his account five hundred shares of the stock at $35.50 per share, but saying *nothing* about the concession of $1 per share, nor the conditions on which said concession was made. They also charged against the plaintiff a commission of $75 on the transaction.

Upon the facts stated above the plaintiff claims the right to rescind the transaction as between him and the defendants, to return the stock and recover the consideration paid by him therefor, to wit, $17,750, and the commission of $75. This claim is made upon two grounds, *first,* that the defendants violated plaintiff's instructions in purchasing the stock by private treaty with F. J. Lisman & Co., instead of purchasing it upon the curb, and, *second,* that by the arrangement with Lisman & Co. the defendants became the purchases of the stock and resold it to the plaintiff, so that in making the resale to the plaintiff they were selling their own property to the plaintiff in violation of the duties imposed on them by law by virtue of their agency. It is unnecessary, in view of what follows, to determine the first of these questions, which depends, in part, upon the exact character of the order given by plaintiff to defendants, which is in dispute. The facts relating to the second of these questions, however, are not in dispute and a pure question of law is presented as to the effect of the transaction, namely, whether or not the defendants, by concealing the nature of their arrangement with said Lisman & Co. from the plaintiff and taking to themselves the benefit of the concession of one dollar per share, allowed them, became the purchasers of the stock on their own account, so that the transfer by them to the plaintiff was in the nature of a resale to the plaintiff of stock owned by them.

It is a fundamental principle of agency that an agent must deal with his principal with the utmost good faith and that he shall not take to himself any advantage from his transaction on behalf of his principal without the fullest knowledge and consent on the principal's part. This rule of conduct has been plainly violated by the defendants. They took to themselves the benefit of the concession in price made by said Lisman & Co., without informing the plaintiff of the existence of the concession. The stock actually was held off of the market for much more than the sixty days mentioned in the agreement with said Lisman & Co., and by reason of that fact the terms of the concession became effective and the defendants were enabled to retain the $500 which was the amount of the concession. Under these circumstances the rule as laid down by Pomeroy comes into operation: " Any unfairness, any underhanded dealing, any use of knowledge not communicated to the principal, any lack of the perfect good faith which equity requires, renders the transaction voidable, so that it will be set aside at the option of the principal." (2 Pom. Eq. Juris. [3d ed.] § 959; 3 Williston Cont. § 1532; *Meinhard* v. *Salmon,* 249 N. Y. 458, 464; *Wendt* v. *Fischer,* 243 id. 439, 440.)

It was conceded by defendants' counsel on the opening of the case that if the defendants became the owners of the stock in question by virtue of their conduct and their arrangement with said Lisman & Co., and resold it to the plaintiff, the plaintiff was entitled to rescind and this contention was not only in accordance with the rule as stated by Pomeroy and quoted above, but is in line with the decided cases in this State. (*Heckscher* v. *Edenborn*, 203 N. Y. 210; *Mayo* v. *Knowlton*, 134 id. 250; *King* v. *Mackellar*, 109 id. 215; 2 C. J. pp. 703, 704, § 361.)

"So sedulously is this principle guarded, that all acts of an agent which tend to violate his fiduciary duty are regarded as frauds upon the confidence bestowed, and are not only invalid as to the principal, but are also against public policy." (2 C. J. p. 693, § 353.)

If the defendants in making the arrangement with Lisman & Co. were acting solely as agents for the plaintiff, it was their unquestionable duty to have communicated to the plaintiff all of the terms of that arrangement so that the plaintiff might be at liberty to accept or reject it and so that he might receive the benefit of the concession of one point per share if he saw fit to do so. (2 C. J. pp. 703, 704, § 361.) By not communicating the facts to the plaintiff and by retaining for themselves the benefit of the concession, whether it be regarded as an abatement of the price or as a collateral agreement made to obtain the good offices of the defendants in keeping the stock off the market, the defendants elected to treat the agreement with Lisman & Co. as an agreement made with themselves as principals and not as an agreement made on behalf of their customer. (2 C. J. p. 817, § 491; 3 Williston Cont. § 1352.) They cannot be held to assert that the agreement was in part with themselves as principals and in part with themselves as agent for their customers. (2 C. J. p. 712, § 367.) They will be required to take the one position or the other in its entirety, and by their action in treating that portion of the arrangement relating to the concession as their own contract, they have put themselves in the position of assuming the whole of the contract and thereby becoming purchasers of the stock from Lisman & Co.

This position is enforced by consideration of the fact that if they be regarded as having acted as agents for the plaintiff in making the arrangement with Lisman & Co., they would have been guilty of fraud, amounting to false pretenses, in representing to the plaintiff that the consideration which they had agreed to pay for the stock was thirty-five dollars and fifty cents per share, without any concession therefrom. It will not be presumed that they put themselves in any such position, and as a consequence it follows

that they became purchasers of the stock at thirty-five dollars and fifty cents, with the concession, and resold to the plaintiffs at thirty-five dollars and fifty cents without concession. Under these circumstances the plaintiff's right of rescission is clear. (2 C. J. pp. 702, 703, §§ 359, 360; 3 Williston Cont. § 1455.)

It is urged that the plaintiff is guilty of laches in delaying the bringing of his action for a number of months and until the stock had greatly depreciated in the market. This claim is unsupported by the evidence, as it appears that the action was brought promptly as soon as the plaintiff became aware of the facts.

From the testimony herein it appears that the practice among brokers, of receiving concessions, as in the case at bar, is a very common one and quite important financially. Such a practice should not be permitted because of the inherent danger that the broker, for his own profit, will not act solely in the interest of his principal. The standard of loyalty now required of a fiduciary should not be consciously lowered by a court of equity. (*Meinhard v. Salmon*, 249 N. Y. 458, 464.)

While there is a dispute as to the direction to buy the stock on the curb market, the law in relation thereto is well settled. Where the instructions given are direct and positive, they must be strictly complied with and no usage or custom will authorize a departure from such instructions. (2 C. J. p. 719, § 377.)

Upon all the facts in the case it is my opinion that the plaintiff is entitled to a judgment against the defendants rescinding the transaction and directing the defendants to accept the return of the 500 shares of stock in question, and to repay to the plaintiff the sum of $17,750 paid therefor, and the $75 commission charged and paid, with interest on the respective amounts from the time of their payment, together with the costs of this action, and findings may be prepared accordingly.